SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**S.C. v. New Jersey Department of Children and Families** (A-57-18) (081870)

**Argued November 18, 2019 -- Decided May 27, 2020**

**LaVECCHIA, J., writing for the Court.**

This appeal involves the investigation into a claim that a mother, S.C., abused her seven-year-old son by engaging in corporal punishment. The Department of Children and Families (Department) concluded, after its investigation, that the claim of abuse was "not established." Because the abuse allegation was deemed "not established" rather than "unfounded," it is not eligible to be expunged. S.C. appealed the Department's action, claiming (1) a deprivation of her due process rights because she was not afforded a hearing and (2) that the Department's "not established" finding was arbitrary and capricious because the record was insufficient to support a finding that her son was harmed. S.C. has not raised a direct challenge to the validity of having a "not established" finding category in the Department's regulations, although some amici have urged that the category be declared illegitimate and eliminated.

In May 2016, the Department received a report of suspected child abuse from an education official in a school district. The abuse allegedly concerned one of S.C.'s triplets, "Luke," who refused to make a Mother's Day card for S.C. and said, among other things, that his mother hits him with an open hand and with a spatula. A Department investigator interviewed Luke, his sisters, S.C., and her husband ("Martin"). The investigator also visited the children's school. The children's principal said that on the day that Luke made the allegation the boy was having a bad week, which was unusual for him. Although he had behavioral problems in the past, she said that Luke had "significantly improved." She also stated that she was surprised when Luke reported that his mother hit him, adding that the parents are "very involved" and that, prior to this, school personnel had not had other concerns with the family.

When the investigator interviewed Luke, he said that his mother "smacks" him, and that she has "hit him on his butt with [a] spatula[,]" but he could not remember the last time either happened. He said that his father also hits him with his hand. Luke's sisters told the investigator that sometimes their parents hit them with an open hand, but each denied having been hit with a spatula. The investigator observed no marks or bruises on any of the children.

1

The investigator interviewed S.C. and Martin during an unannounced home visit. S.C. admitted that she has hit the children with an open hand. She denied that she has used a spatula to strike the children but "admitted that she smacks the spatula on the counter to get their attention." Martin admitted to "lightly" spanking his children on occasion. He denied using objects and denied having seen his wife hit the children with a spatula. However, he said he has seen his wife hit a spatula on the counter to get the children's attention. The investigator added that the home was "fully furnished, clean and well organized." Each child had appropriate sleeping arrangements and sufficient food. The utilities were on and the investigator did not observe any hazards.

The above information in the investigator's report resulted in the Department's classifying the allegations of physical abuse against S.C. as "not established." That designation signifies that "there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3).

The Department sent a letter to the children's school stating that the investigation was complete and that it had determined no need to provide services to the children. The Department also sent a letter to S.C., informing her that its investigation into the allegations was complete and that it had determined that the allegations were "Not Established." S.C. was not allowed an administrative appeal opportunity and, apparently, had no opportunity to review, supplement, or discuss the Department's investigatory materials before the decision issued. Thereafter she filed an appeal in the Appellate Division from the agency action finding the allegations of abuse to be "not established."

The Appellate Division was unpersuaded that an adjudicatory hearing had to be provided when an investigation results in a "not established" finding, which it regarded as "purely investigatory in nature" and which is not disseminated. The Appellate Division also held that the Department's "not established" finding in this matter was not arbitrary, capricious, and unreasonable, pointing to facts that provided "'some evidence' indicating that S.C. hit the children, even without a spatula, when she was upset with their behavior, leading to the possibility that she could misgauge how much force she was using and put them at risk of harm." In a concurring opinion, Judge Messano, P.J.A.D., agreed that the denial of an administrative hearing to challenge a "not established" finding did not violate S.C.'s due process rights but wrote separately to express two concerns. First, the letter the Department sent to S.C. "did nothing but parrot the regulatory language and advise S.C. of the consequences of the findings"; "the letter fail[ed] to state, even in conclusory terms, what evidence supported the finding." Second, the letter's lack of information was pertinent because, although due process rights are not violated, a "not established" finding may have negative consequences in the future because the record is not subject to expunction.

The Court granted S.C.'s petition for certification. 237 N.J. 165 (2019).

2

**HELD:** The Court reverses and remands (a) for the Department to provide improved notice of the basis on which its investigation has found some evidence -- which the Court stresses must be some <u>credible</u> evidence -- to support the allegation of harm; and (b) for S.C. to have an informal opportunity before the Department to rebut and/or supplement the record before the Department finalizes its finding. The Court does not address the amici's challenge to the validity of the "not established" category but recognizes problems with the standard as presently articulated and notes that it would be well worth the effort of the Department to revisit its regulatory language concerning the standard for making a "not established" finding as well as its processes related to such findings.

1. When the Department receives an allegation of child abuse or neglect, it must investigate and determine "whether abuse or neglect has occurred." N.J.A.C. 3A:10-7.3(a) to (b). "[T]he Department representative shall make a finding that an allegation is 'substantiated,' 'established,' 'not established,' or 'unfounded.'" N.J.A.C. 3A:10-7.3(c). The differentiation among those four categories creates two general classes of findings. "A finding of either established or substantiated shall constitute a determination . . . that a child is an abused or neglected child," while "[a] finding of either not established or unfounded shall constitute a determination . . . that a child is not an abused or neglected child." N.J.A.C. 3A:10-7.3(d). A finding that an allegation is "unfounded" is subject to expunction. A record containing a "substantiated," "established," or "not established" finding is required to be retained. (pp. 21-25)

2. Prior to 2013, Department investigations could result in one of two findings: "substantiated" or "unfounded." The current four-category system took effect in 2013 following robust public input. The Department explained its intent in differentiating between "not established" and "unfounded" when rejecting a comment that "not established" findings should be eligible for expunction: "The critical distinction . . . is that not established findings are based on some evidence, though not necessarily a preponderance of evidence, that a child was harmed or placed at risk of harm." And to prepare for "the investigation of future allegations," the Department determined that the "information contained in records of not established cases must be maintained." For records the Department retains, confidentiality is the presumptive starting point, but N.J.S.A. 9:6-8.10a(a) provides for the release of information regarding reports of child abuse in twenty-two enumerated circumstances, and the Department may consider a "not established" finding in its child protection and welfare work. (pp. 25-31)

3. When determining the protections due process demands in a given situation, the Court applies the balancing test from <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976). <u>Mathews</u> recognizes that an evidentiary hearing "is neither a required, nor even the most effective, method of decisionmaking in all circumstances," so long as the person whose rights are affected is given an opportunity to assert his or her claim prior to any administrative action. <u>Id.</u> at 348-49. Thus, minimally, notice and opportunity to be heard are the essentials of due process. (pp. 31-33)

3

4. Here, S.C. underwent a Department investigation based on an alleged claim that she engaged in child abuse. An investigation is distinct from an adjudication of facts and gives rise to a different set of expectations. When a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Here, the Appellate Division rightly viewed S.C.'s claimed right to an adjudicatory hearing through the prism of the Department's investigatory finding. The Department has not adjudicated facts or reached any sort of conclusion about what actually occurred when it applies a "not established" finding; rather, it merely ascribes what functions as a working label to the evidence collected through investigation. That distinction substantially lessens any private interest impact that S.C. can claim, and any claimed private interest is far outweighed by the Department's legitimate reasons for acting knowledgeably in future investigations. The Court separately considers S.C.'s interest in the investigatory finding in connection with the exceptions and disclosures enumerated in N.J.S.A. 9:6-8.10a. The Court concludes that due process does not compel imposition of a formalized adversarial trial-type process in the setting of a "not established" finding -- where no child abuse conclusion has been reached. (pp. 33-42)

5. S.C.'s reputational interest can be properly respected without the requirement of a full-fledged adjudicatory hearing. The essential elements of notice and opportunity to be heard are what due process protects. In keeping with those essentials, when the Department is concluding an investigation into suspected child abuse or neglect and expects to issue a finding of "not established," notice -- meaningful for due process considerations -- of that investigatory finding should be provided to the individual. The notice should include a summary of the support for the finding, and the Department's reasoning should be transparently disclosed. Moreover, the individual must be informed of his or her opportunity to rebut the Department's conclusion or supplement the record so that the informal opportunity to be heard before the agency is not illusory. The current process of not making a record available unless and until an appeal is filed is no substitute. (pp. 42-44)

6. Here, the conclusory letter that the Department sent to S.C. failed to inform her of the basis for the Department's "not established" finding. And there does not appear to be an adequate means of formally making known to a parent or guardian under investigation the opportunity to be heard informally and rebut or supplement the record. Corrective action by the Department in the future can solve that. (p. 44)

7. With respect to the Department's standard for making a finding of "not established," the Court agrees with the criticism that the standard for that finding, as written now, is vague, amorphous, and incapable of any objective calibration. All that is known is that it requires less than a preponderance of the evidence and involves "some" evidence. At the very least, the "some evidence" description advanced by the Department must be understood to be "credible evidence." Beyond that one cannot know what the Department intends by its standard and how it is to be evaluated. The Court leaves to the

4

Department the responsibility to reexamine and clarify its standard. No facial challenge is presented in this matter and the Court will not reach the issue without that. (pp. 44-46)

**REVERSED and REMANDED.**

**JUSTICE ALBIN, concurring in part and dissenting in part,** agrees with the majority that the Department's "some evidence" standard for making "not established" determinations is vague and amorphous and has led to shortcomings in fairness for parents and guardians. However, Justice Albin would go further and strike down the "not established" category. Justice Albin writes that the Department, in creating a "not established" category, has exceeded the authority delegated to it by the Legislature. The "not established" category, in Justice Albin's view, has allowed the Department to elide making the determination that the Legislature expects of it -- a determination whether the allegation is unfounded -- and the Department's good intentions cannot save a regulation that undermines the Title Nine expungement statute. Justice Albin would end this case today and spare S.C. the hardship and expense of a remand because the Department's own findings establish that the abuse and neglect allegations in S.C.'s case are "unfounded," as defined by the Department's own regulation.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate opinion, concurring in part and dissenting in part.**

SUPREME COURT OF NEW JERSEY
A-57 September Term 2018
081870

S.C.,

Plaintiff-Appellant,

v.

New Jersey Department of Children and Families,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| November 18, 2019 | May 27, 2020 |

Victoria D. Miranda argued the cause for appellant
(Williams Law Group, attorneys; Allison Williams, of
counsel and on the brief, and Victoria D. Miranda on
the briefs).

Peter Alvino, Deputy Attorney General, argued the
cause for respondent (Gurbir S. Grewal, Attorney
General, attorney; Melissa H. Raksa, Assistant
Attorney General and Jason W. Rockwell, Assistant
Attorney General, of counsel, and Peter Alvino and
Julie B. Colonna, Deputy Attorney General, on the
briefs).

Melville D. Miller Jr. argued the cause for amicus
curiae Legal Services of New Jersey (Legal Services
of New Jersey, attorneys; Melville D. Miller Jr., Mary

1

M. McManus-Smith, Jeyanthi C. Rajaraman, Chiori Kaneko, and Sylvia L. Thomas, on the briefs).

Katherine Haas argued the cause for amicus curiae American Civil Liberties Union on New Jersey (American Civil Liberties Union Foundation and Fox Rothschild, attorneys; Jacob S. Perskie and Victoria T. Salami, of counsel and on the brief, and Jeanne LoCicero and Alexander Shalom, on the brief).

Deric Wu Assistant Deputy Public Defender, argued the cause for amicus curiae Office of Parental Representation (Joseph E. Krakora, Public Defender, Office of Parental Representation, attorney; T. Gary Mitchell, Deputy Public Defender, and Robyn A. Veasey, Deputy Public Defender, of counsel, and Deric Wu, of counsel and on the brief).

Jeralyn L. Lawrence argued the cause for amicus curiae New Jersey State Bar Association (Evelyn Padin, President, New Jersey State Bar Association, attorneys; Jeralyn L. Lawrence, Daniel A. Burton, Thomas J. DeCataldo, Jr., and Ronald G. Lieberman, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

The Department of Children and Families (Department) is charged with the responsibility to investigate all allegations of child abuse or neglect.[1] Pursuant to its operational regulations, the Department's investigation into

---

[1] Although the Division of Child Protection and Permanency within the Department performs this responsibility, see N.J.S.A. 9:6-8.11, we refer throughout to the Department, which is the named defendant-respondent.

such allegations can result in one of four possible determinations. An allegation can be "substantiated," "established," "not established," or "unfounded." N.J.A.C. 3A:10-7.3(c). Different consequences flow from those designations.

This appeal involves the Department's investigation into a claim that a mother, S.C., abused her seven-year-old son by engaging in corporal punishment. The investigation concluded that the claim of abuse was "not established." The Department sent a letter informing S.C. of that finding, but the letter provided little detail and no explanation for that determination. Because the abuse allegation was deemed "not established," it is not eligible to be expunged. The Legislature requires expunction only for child abuse or neglect allegations determined to be "unfounded," see N.J.S.A. 9:6-8.40a, and no statutory or regulatory provision authorizes expunging allegations of the other three possible determinations. Although the record and report involving S.C.'s "not established" finding is statutorily confidential, the information can be made available under circumstances identified by the Legislature in N.J.S.A. 9:6-8.10a.

S.C. appealed the Department's action, claiming (1) a deprivation of her due process rights because she was not afforded a hearing and (2) that the Department's "not established" finding was arbitrary and capricious because

3

the record was insufficient to support a finding that her son was harmed. The Appellate Division's decision affirmed the Department's action, with a concurrence expressing a need for revision in the Department's processes.

We now reverse and require further action. We remand (a) for the Department to provide improved notice of the basis on which its investigation has found some evidence -- which we here stress must be some <u>credible</u> evidence -- to support the allegation of harm; and (b) for S.C. to have an informal opportunity before the Department to rebut and/or supplement the record before the Department finalizes its finding. We reject that due process considerations require the Department to conduct an adjudicative contested case proceeding either internally or at the Office of Administrative Law for a "not established" finding. That said, on the basis of the present record, we cannot assess whether the "not established" finding in this instance was arbitrary or capricious.

S.C. has not raised a direct challenge to the validity of having a "not established" finding category in the Department's regulations, although some amici have urged that the category be declared illegitimate and eliminated. We will not address an argument not raised by appellant, particularly when the Department advances a facially legitimate basis for such findings' use and an argument that the regulation's promulgation was reasonably within its

4

statutory delegation of authority. However, we recognize problems with the standard as presently articulated. It would be well worth the effort of the Department to revisit its regulatory language concerning the standard for making a "not established" finding as well as its processes related to such findings. Our review of this matter brings to light shortcomings in fairness for parents and guardians involved in investigations that lead to such findings and which may require appellate review.

## I.

## A.

The facts are gleaned from the Department's investigatory file in this matter. The file, redacted to protect identities and other information required by law to be kept confidential, was not made available to S.C. until this matter was appealed to the Appellate Division.[2]

---

[2] This is the procedure presently used by the Department. The Department stated at oral argument that the investigative summary report is first revealed to the family on appeal, at the latest, when the statement of items comprising the record on appeal is filed. The only source of information concerning a Department investigation a parent has prior to an appeal is through discussion with a case worker during the investigation itself when information is collected or through a discussion with the Department, if the parents so choose, under N.J.S.A. 9:6-8.10a(b)(19) (allowing release of information "only to the extent necessary" for parents to discuss Department "services," to participate in "case plan" development or implementation, or "to understand the basis for the [D]epartment's involvement"). After parents receive a letter from the Department reporting the agency's findings, their recourse is appellate review.

On May 4, 2016, the Department received a report of suspected child abuse from an education official in a school district. The abuse allegedly concerned one of S.C.'s triplets. The reporting source informed the Department that S.C.'s son, Luke,[3] "disclosed that his mother hits him." According to the reporter, the information was revealed when Luke "refused to make his mother a Mother's Day card and stated that he hated her." Luke then said a number of other things: that his mother hits his "face, stomach, and buttocks," and that "one time his buttocks was as red as a fire truck"; that his mother hits him with an open hand and with a spatula; and that the last time S.C. hit him was two days prior, when he refused to shower. He also "stated that one time he said that it didn't hurt when he was hit so he got hit again."

When Luke's noncompliant behavior in school was noted by a school official, and a report of alleged abuse was relayed to the Department, Luke and his sisters were within days of turning eight years old. Luke was a special needs student, classified as emotionally disturbed. Although Luke had been challenged by behavioral issues in the past (while in kindergarten, he had ripped down a shelf holding a TV monitor), according to his education case manager, he was doing much better.

---

[3] Pseudonyms are used to protect the family's confidentiality.

The day after the alleged abuse was reported, a Department investigator interviewed Luke, his sisters, S.C., and her husband (Martin). The investigator also visited the children's school.

The education case manager reiterated the allegations detailed in the report from the previous day and added that S.C. and her husband "always attend child study team meetings" and that "[t]he school had no other concerns regarding the family." Similarly, the children's principal told the investigator that on the day that Luke made the allegation the boy was having a bad week, which was unusual for him. Although he had behavioral problems in the past, she said that Luke had "significantly improved." She also stated that she was surprised when Luke reported that his mother hit him, adding that the parents are "very involved" and that, prior to this, school personnel had not had other concerns with the family.

When the investigator interviewed Luke, he told the investigator that he understood the difference between a truth and a lie. With respect to his mother, Luke stated that she counts "1, 2, 3" "a lot." When asked what happens when his mother gets to three, he responded, "It's inappropriate." In particular, he told the investigator that his mother "smacks" him, and that she has "hit him on his butt with [a] spatula[,]" but he could not remember the last time either happened. Luke said that the smacks "kind of hurt[]" but he also

7

thinks it is funny. He said that his father also hits him with his hand. During the interview, he reported that he has been hit on the leg and butt but denied ever being hit in the face. According to the investigator, Luke "appeared to be clean and well kept," and the investigator did not observe any marks or bruises on the boy.

Luke's sisters told the investigator that sometimes their parents hit them with an open hand, but each denied having been hit with a spatula. Both denied being fearful of either parent, and the investigator observed no marks or bruises on either girl.

The investigator interviewed Luke's parents in an unannounced home visit. According to the investigator, Martin was initially "hesitant" to let her inside their home. When told by the investigator why she was there, "he responded that it is legal to hit children." Each parent was interviewed separately.

S.C. admitted to the investigator that she has hit the children with an open hand. When having to correct the triplets' behavior, she said that "she threatens the children and then does not follow through." She explained that the children were getting too old for timeouts to be meaningful to correct poor behavior. She denied that she has used a spatula to strike the children but "admitted that she smacks the spatula on the counter to get their attention."

S.C. also said that her husband hits the children occasionally. Finally, she reported that it is "challenging at times" to discipline the triplets but that "she will stick to sending the children to their rooms and removing privileges." She also told the investigator that she was endeavoring to have Luke's classified status removed.

Martin admitted to "lightly" spanking his children on occasion. He denied using objects and denied having seen his wife hit the children with a spatula. However, he said he has seen his wife hit a spatula on the counter to get the children's attention.

The investigator added that the home was "fully furnished, clean and well organized." Each child had appropriate sleeping arrangements and sufficient food. The utilities were on and the investigator did not observe any hazards.

The above information in the investigator's report resulted in the Department's classifying the allegations of physical abuse against S.C. as "not established." That designation signifies that "there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3). The allegations against S.C. were

not reported to the prosecutor's office.  Cf. N.J.S.A. 9:6-8.10a(e) ("substantiated" findings must be forwarded to law enforcement).

On May 25, 2016, the Department sent a letter to the children's school stating that the investigation was complete and that it had determined no need to provide services to the children.  The same day, the Department sent a letter to S.C., informing her that its investigation into the allegations was complete and that it had determined that the allegations were "Not Established."[4]  The letter stated in full:

> New Jersey law, as set forth in N.J.S.A. 9:6-8.11, requires the Department of Children and Families (DCF) Division of Child Protection and Permanency (CP&P) to investigate all allegations of child abuse and neglect.  On May 4, 2016 the Division's Bergen Central Local Office received an allegation that [Luke and his sisters] were abused.
>
> CP&P conducted its required investigation and determined that the allegation was Not Established.  A record of the incident will be maintained in CP&P files.  Current law provides that this information may not be disclosed by the Division except as permitted by N.J.S.A. 9:6-8.10a.  A finding of Not Established is not subject to an administrative appeal.
>
> Pursuant to N.J.A.C. 10:129-7.3c(3), the Division enters a finding of "Not Established" when some evidence indicates that a child was harmed or placed at

---

[4]  The Department sent another letter, as required by N.J.A.C. 3A:10-7.8(a), notifying S.C. that it would not be providing services to the children.

> some risk of harm, but there is not a preponderance of evidence that the child has been abused or neglected per N.J.S.A. 9:6-8.21.
>
> The Division will not be providing further services to [the children] and your family.

S.C. was not allowed an administrative appeal opportunity and, apparently, had no opportunity to review, supplement, or discuss the Department's investigatory materials before the decision issued. Thereafter, on July 8, 2016, she filed an appeal in the Appellate Division from the agency action finding the allegations of abuse to be "not established."

B.

On appeal, S.C. argued that the finding of "not established" was arbitrary, capricious, and unreasonable because the record was insufficient to find the child was harmed and that her inability to challenge the Department's "investigatory finding through the administrative process" violated her due process rights. The Appellate Division rejected both arguments and affirmed the Department's determination.

The Appellate Division acknowledged that the Department's rules grant an administrative hearing only when finding that an abuse or neglect allegation is "substantiated" and was unpersuaded that an adjudicatory hearing had to be provided when an investigation results in a "not established" finding. The

11

Appellate Division regarded the "not established" finding as "purely investigatory in nature," explaining that "[a]n investigator simply interviews witnesses and examines other available evidence, reviews and analyzes this information and makes a recommendation as to whether any action should be taken against the subject of the investigation," adding, "[t]here is no definitive finding as to the truth of the allegations by a disinterested, impartial third party."

Further, because a record of a "not established" finding is not disseminated, the court determined that the finding "does not impugn S.C.'s reputational or privacy interests to an extent that would trigger the need for an adjudicatory hearing." The court reviewed how "not established" findings are "not made public, the accused's name is not included in the Central Registry[,] and the finding is not disclosed in connection with a Child Abuse Record Information (CARI) check." (citing N.J.A.C. 3A:10-7.7). Although the Department retains and uses records from an incident deemed "not established," the court did not find a protectible due process interest violated when the "information [was] kept for the use of the agency and entities involved in the protection of children." The Appellate Division distinguished this case from the facts in Department of Children & Families v. R.R., 454 N.J. Super. 37, 43 (App. Div. 2018), and rejected dictum in that case about how "a

12

'not established' finding 'is not what it seems' and 'still permanently tars a parent with a finding that there was something to the allegation.'"

The Appellate Division also held that the Department's "not established" finding in this matter was not arbitrary, capricious, and unreasonable. The Appellate Division pointed to the following facts: "Luke told school officials his mother hit him with a spatula as well as with an open hand"; Luke "repeated those allegations the following day to the [Department] investigator"; Luke's allegation that S.C. struck him with an open hand on his buttocks and legs was corroborated by Luke's father, sisters, and even S.C.; even though Luke was classified as emotionally disturbed, "neither school officials nor Luke's family suggested Luke was prone to making things up"; although Luke "had significant behavioral problems in kindergarten," his behavior had improved; S.C. "acknowledged she hit Luke and his sisters with an open hand" and "admitted to slapping the spatula on her kitchen counter to get the triplets' attention and 'threatening them' but 'not following through'"; S.C. "admitted she found [the children's] behavior 'challenging at times'" and "expressed her frustration at the ineffectiveness of timeouts and the withholding of privileges in moderating their behavior"; and "Luke's principal reported that Luke claimed that once when he got hit, he said it did not hurt, so he got hit again." The Appellate Division concluded that "those facts provide

13

'some evidence' indicating that S.C. hit the children, even without a spatula, when she was upset with their behavior, leading to the possibility that she could misgauge how much force she was using and put them at risk of harm."

In a concurring opinion, Judge Messano, P.J.A.D., agreed that the denial of an administrative hearing to challenge a "not established" finding did not violate S.C.'s due process rights but wrote separately to express two concerns.

First, Judge Messano noted that he was "only convinced there is 'some evidence' to support the finding in this case because of [the court's] extensive review of the record." The letter sent to S.C. "did nothing but parrot the regulatory language and advise S.C. of the consequences of the findings"; "the letter fail[ed] to state, even in conclusory terms, what evidence supported the finding."

The concurrence faulted the letter for another reason. Quoting from the Department's own statement when creating a four-tier system of possible findings, having four categories was intended to "allow[] the investigative findings and records to better reflect the circumstances of an investigation." (internal quotation marks omitted) (quoting 44 N.J.R. 357(a) (Feb. 21, 2012)). According to the concurrence, here the letter reporting the Department's findings "hardly reflected 'the circumstances of the investigation,' nor did it 'reflect the nature' of the investigator's' 'conclusions' about S.C.'s conduct."

14

That lack of information was pertinent, said the concurring judge, because although due process rights are not violated, a "not established" finding may have negative consequences in the future because the record is not subject to expunction. A "not established" finding allows the Department to retain the record, which in turn "allow[s] the [Department] to have a better and more comprehensive understanding of a family should additional referrals be received by the [Department] in the future." Notably, the record is also "subject to disclosure in a host of situations," and "the records of 'not established' referrals live on forever within the [Department]." (quoting 44 N.J.R. 357(a)). The concurrence stressed the need for the Department to accurately express "findings and conclusions in sufficient detail." According to the concurring judge, a remand for a more specific letter explanation of the results of the investigation was not necessary because here there was "no required dissemination to third parties" of the Department's finding.

We granted S.C.'s petition for certification. 237 N.J. 165 (2019). Thereafter, we granted amicus curiae status to the American Civil Liberties Union (ACLU), Legal Services of New Jersey (LSNJ), the Office of Parental Representation of the Office of the Public Defender (OPR), and the New Jersey State Bar Association (NJSBA).

15

II.

A.

1.

S.C. argues that the Appellate Division erred in affirming the investigative finding of "not established" because there was no evidence that the children were injured or suffered impairment.  S.C.'s admission that she occasionally spanked the children with an open hand in the past, she contends, cannot provide evidence of harm or risk of harm.  A finding that children are placed at risk of harm from an open-handed spank "permits the [Department] to find that any time a parent exercises their constitutional right to parent a child and use autonomy in determining discipline, they have to be concerned that they will be branded as a parent who places their children at risk of harm." She further contends that Luke's statement that S.C. hit him with a spatula was uncorroborated.  None of the children had marks or bruises on their bodies or reported experiencing any lasting pain.  Therefore, she asserts that the Department's finding that the children were placed at harm or risk of harm was arbitrary and capricious.

As she argued below, S.C. also contends that her due process rights were violated when the Department entered an administrative finding of "not established" with no opportunity to challenge the evidence that was relied

upon. S.C. argues that the Department "impugns a parent permanently with a finding that they have harmed or placed their child at risk of harm," which should trigger a due process right to a hearing. She emphasizes that records of a "not established" finding are retained by the Department and argues that it may be used against her in several other settings, including as an aggravating factor to demonstrate a pattern of abuse or neglect if ever there were a later investigation of the family.

Finally, S.C. argues that the Department's letter itself failed due process requirements. It failed to provide any meaningful explanation of the evidence relied upon by the Department when making its finding. The lack of factual findings also inhibits judicial review to which she is entitled as of right.

2.

The Department argues that the creation of an investigatory finding category of "not established" is consistent with its broad statutory authority and responsibility under Title Nine. The Department points to its obligation to investigate every incident and prepare a report on its findings. The "not established" finding enables investigators "to accurately reflect the nature of their conclusions" even when it finds no statutory abuse, but finds harm caused to the child. It maintains that "retention of Department records where some evidence indicates a child has been harmed or placed at risk of harm" is

17

important to the fulfillment of its mission. The "not established" finding and the record retained as a result of that finding assist the Department in the performance of its investigatory task by recording the concern raised by the investigation and, thus, allowing the Department to better assess future alleged incidents.

The Department disagrees that the records may be released in many circumstances. It asserts that "investigations are confidential and may only be disclosed for limited purposes specified by statute," which the Department reviewed and explained. Moreover, it contends that the rules of evidence further limit the ability of a "not established" finding to be admitted or given weight in any subsequent action without opportunity to be heard at that time.

The Department disputes that under a due process analysis S.C. is entitled to an administrative hearing for the "not established" finding. It notes that the Appellate Division has never required an administrative hearing for other such investigatory findings. The Department emphasizes that "no conclusion has been drawn that S.C. did anything harmful to her children, the information at issue has not been publicly disseminated, and she has been given the opportunity to explain her position in the course of the [Department's] investigation." The Department adds that its "not established"

finding is ill suited to resolution in a disputed trial-type hearing because it is not based on adjudicated facts.

Finally, the Department argues that were a trial-type hearing to be required for every "not established" finding, the number of proceedings to be transmitted to the Office of Administrative Law would be overwhelming. Out of 87,574 investigations, 62,514 resulted in "not established" findings. The Department claims the State's interest in not having over 60,000 new administrative hearings is significant.

B.

The amici support S.C. on the outcome in this matter. They add to her arguments in favor of reversing the Appellate Division's affirmance of the Department's action.

1.

The ACLU contends that a person enjoys a right to due process protection of reputation without having to show tangible loss. It asserts that because a "not established" finding may be disclosed to government agencies, individuals, employers, as well as others during a background check, such a finding implicates a person's reputation and, thus, her liberty interests. The Department may also use the finding as evidence in subsequent investigations involving the family. Thus, the ACLU notes that although people have a right

19

to appeal agency decisions to the Appellate Division, the resulting decision is subject to the factual and credibility determinations of the agency, which a person has no ability to refute. Regarding the present matter, the ACLU asserts that it is unclear which, if any, of Luke's claims the Department found credible and that an administrative hearing would clarify the basis for the Department's finding.

2.

OPR agrees with S.C. that a "not established" finding is an adjudicatory finding that requires a hearing. OPR adds that "not established" findings are maintained in the child abuse registry records in perpetuity and may be disclosed or relied upon in a variety of circumstances and, therefore, require due process protection. Because of the reputational interest at stake in this case, OPR contends that an administrative hearing is required.

3.

NJSBA's position is that the standard for "not established" findings is "amorphous," leads to arbitrary and capricious results, and should be eliminated as a possible outcome to a Department investigation.

It argues that it is not clear what burden of proof a "not established" finding requires, other than that it is less than a preponderance of the evidence. Thus, "there is no objective or measurable standard to differentiate between

20

findings of 'not established,' and findings of 'unfounded.'" NJSBA also asserts that a "not established" finding, based on a mere investigation, may interfere with parental rights and tarnish a parent's reputation in many potential settings, including, for example, in custody litigation where Department findings may be improperly used "as a sword" to affect a spouse's parental rights.

## 4.

LSNJ argues that, in addition to the statutory means for disclosing "not established" findings, other disclosures are possible, and, therefore, the subject of an investigation resulting in such a finding must receive due process protections. LSNJ further argues that state statutes, legislative and regulatory history, prior litigation, and federal law "combine to invalidate the current regulatory" framework that uses a four-tier scheme and "compel a binary system" of possible investigatory conclusions.

## III.

## A.

Declaring the safety of children to be of paramount concern, the Legislature enacted an extensive set of laws designed to protect children under the age of eighteen from "serious injury inflicted upon them by other than accidental means." N.J.S.A. 9:6-8.8(a). Codified as Title Nine, the legislation

21

imposes on the Department the broad responsibility to investigate allegations of child abuse and neglect and to take immediate action as "necessary to insure the safety of the child."  N.J.S.A. 9:6-8.11.

Complementing regulations govern the Department's investigations into allegations of abuse and neglect.  See N.J.A.C. 3A:10-1.1 to -8.5.  The regulations detail how the Department will conduct its evaluative investigatory task.  Whenever the Department receives an allegation, complaint, or report of child abuse or neglect, it must investigate and determine within a set timeframe "whether abuse or neglect has occurred."  N.J.A.C. 3A:10-7.3(a) to (b).  Pertinent to this appeal, N.J.A.C. 3A:10-7.3(c) requires the Department to render one of four possible findings at the conclusion of each investigation.

> For each allegation, the Department representative shall make a finding that an allegation is "substantiated," "established," "not established," or "unfounded."
>
> 1. An allegation shall be "substantiated" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21 and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5.
>
> 2. An allegation shall be "established" if the preponderance of the evidence indicates that a child is

22

an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21, but the act or acts committed or omitted do not warrant a finding of "substantiated" as defined in (c)1 above.

3. An allegation shall be "not established" if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm.

4. An allegation shall be "unfounded" if there is not a preponderance of the evidence indicating that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, and the evidence indicates that a child was not harmed or placed at risk of harm.

[N.J.A.C. 3A:10-7.3(c).]

That differentiation creates two general classes of findings, which break down on the basis of whether a finding that a child is an "abused or neglected child," under the statutory definition of that term,[5] can be made based on a

_____

[5] The definition of an abused or neglected child in pertinent part includes

a child . . . whose parent or guardian . . . (1) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement . . . ; (2) creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means . . . (4) or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or

23

preponderance of the evidence.  That basic schematic design is captured in the regulation itself:

> (d) A finding of either established or substantiated shall constitute a determination by the Department that a child is an abused or neglected child pursuant to N.J.S.A. 9:6–8.21.  A finding of either not established or unfounded shall constitute a determination by the Department that a child is not an abused or neglected child pursuant to N.J.S.A. 9:6–8.21.
>
> [N.J.A.C. 3A:10-7.3(d).]

The regulations further provide that a finding that a report, complaint, or allegation of an incident of child abuse or neglect is "unfounded" is subject to expunction, as dictated by N.J.SA. 9:6-8.40a(a).  See N.J.A.C. 3A:10-7.7(b).  The Department has defined what "unfounded" means in the context of an investigation and has established a process for determining when such report, complaint, or allegation is deemed "unfounded," again as it was required to do under N.J.S.A. 9:6-8.40a(b).  The administrative regulations codified at N.J.A.C. 3A:10-8.1 to -8.4 lay out the standards and procedure for expunction

---

> guardian, . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court.
>
> [N.J.S.A. 9:6-8.21(c).]

24

of records. Notably, a record containing a "substantiated," "established," or "not established" finding is required to be retained, as specified in N.J.A.C. 3A:10-8.1(b).

Those are the basic provisions of the statutory and administrative scheme in which the present appeal arises.

B.

In order to fully appreciate the parties' positions on the due process challenge raised in this matter, it is helpful to know a little about the regulatory background to the current "not established" finding that is possible under the present four-tier system of potential investigatory findings.

Briefly, we note that, although Department regulations providing for categories of findings in child abuse investigations have changed over time, immediately prior to 2013, Department investigations could result in one of two findings: "substantiated" or "unfounded." See 45 N.J.R. 738(a) (Apr. 1, 2013); 44 N.J.R. 357(a). The current four-category system took effect in 2013 following robust public input through rule comment and adoption proceedings, as the Department and others have set forth in their briefing.[6] The Department

---

[6] See 45 N.J.R. 738(a); 44 N.J.R. 2437(a) (Nov. 5, 2012). Some commenters urged return to a framework similar to the three-category system, which between 1995 and 2005 had included the additional category of "unsubstantiated"; some others strenuously argued for retaining the two-

asserted that adopting the present four categories of investigatory findings would "assist in fulfilling [its] commitment" to "protecting children from harm," while clearly differentiating "between what is abuse and neglect and what is not abuse and neglect." See 45 N.J.R. 738(a), responses to comments 46, 47, 48, 81, and 82. In the regulatory record for the current regulations, the Department explained that its new scheme avoided shortcomings perceived in a former "not substantiated" category eliminated in 2005.

> An inherent failing of the three tier findings structure utilized by the Department . . . was that the "not substantiated" finding provided a means by which a determination of the occurrence of abuse or neglect's occurrence could be avoided. . . . Findings of "substantiated" and "established" require that a preponderance of evidence supports a finding that abuse or neglect did occur; findings of "not established" and "unfounded" require determination that there is insufficient or no evidence that abuse or neglect occurred. This is consistent with the Department's prior rationale for the elimination of the "not substantiated" finding.
>
> [Id. at response to comment 77.]

---

finding framework. See 45 N.J.R. 738(a), comments 9, 27, 45, 46, 47, 48, 49, 77, 81, and 82.

S.C. acknowledges that she did not advance a facial challenge to the regulatory category of "not established" applied in her investigation, unlike some amici who now argue that the category is invalid and should be eliminated. We will not be addressing that issue, which appellant has not raised. That said, we include reference to the Department's explanation of the purpose of the "not established" finding in the four-category system it adopted.

26

Further, the Department explained its intent in differentiating between "not established" and "unfounded" when responding to, and rejecting, a comment that "not established" findings should be eligible for expunction under N.J.A.C. 10:129-7.7(b), presently codified at N.J.A.C. 3A:10-8.1.

> The critical distinction between findings of not established and unfounded is that not established findings are based on some evidence, though not necessarily a preponderance of evidence, that a child was harmed or placed at risk of harm. Because the investigation of future allegations must include consideration of past incidents in which an involved child was harmed or placed at risk of harm, the critical information contained in records of not established cases must be maintained.

> [Id. at response to comment 86.[7]]

---

[7] According to the Department in its argument to this Court, its choice to retain and, for child protection purposes, use records from investigations resulting in "not established" findings is permissible under federal law, citing the Child Abuse Prevention and Treatment Act (CAPTA). CAPTA requires a state child protective services system that receives federal monies under 42 U.S.C. § 5106a(a) to include procedures to

> facilitate the prompt expungement of any records that are accessible to the general public or are used for purposes of employment or other background checks in cases determined to be unsubstantiated or false, except that nothing in this section shall prevent State child protective services agencies from keeping information on unsubstantiated reports in their casework files to assist in future risk and safety assessment.

> [42 U.S.C. § 5106a(b)(2)(B)(xii).]

27

## C.

For records the Department retains, confidentiality is the presumptive starting point, but the same provision of Title Nine also provides for the release of information regarding reports of child abuse in certain circumstances. N.J.S.A. 9:6-8.10a(a) provides in pertinent part:

> All records of child abuse reports made pursuant to [N.J.S.A. 9:6-8.10], all information obtained by the Department of Children and Families in investigating such reports including reports received pursuant to [N.J.S.A. 9:6-8.40], and all reports of findings forwarded to the child abuse registry pursuant to [N.J.S.A. 9:6-8.11] shall be kept confidential and may be disclosed only under the circumstances expressly authorized under subsections b., c., d., e., f., and g. herein. The department shall disclose information only as authorized under subsections b., c., d., e., f., and g. of this section that is relevant to the purpose for which

---

See also Children's Bureau, U.S. Dep't of Health & Human Servs. (DHHS), Disclosure of Confidential Child Abuse and Neglect Records (June 2017), https://www.childwelfare.gov/pubPDFs/confide.pdf. That 2017 Report, published through DHHS's website, states,

> [s]tate child protective services agencies are required to maintain records of the reports of suspected child abuse and neglect that they receive. These reports include identifying information about the child, the child's family, conditions in the child's home environment, the nature and extent of the child's injuries, and information about other children in the same environment
>
> [Id. at 1 (emphasis added).]

28

the information is required, provided, however, that nothing may be disclosed which would likely endanger the life, safety, or physical or emotional well-being of a child or the life or safety of any other person or which may compromise the integrity of a department investigation or a civil or criminal investigation or judicial proceeding.

[N.J.S.A. 9:6-8.10a(a).]

Further details in Department regulations specify that in a CARI check, only "substantiated" findings are released. N.J.A.C. 3A:10-7.7(a). "Unfounded" findings are expunged, generally within three years, see N.J.A.C. 3A:10-8.2; and, as noted, the Department retains the findings and record for investigations leading to any other conclusion, N.J.A.C. 3A:10-8.1(b), subject to the statutory direction that it be "kept confidential and may be disclosed only [as authorized] under" the statutory enumerated circumstances, N.J.S.A. 9:6-8.10a(a). The list is extensive, twenty-two in number, but in this matter the Department categorized the types of exceptions or allowed disclosure as follows:

- Seven of the disclosures address a government agency's need to access the information urgently. N.J.S.A. 9:6-8.10a(b)(1), (b)(2), (b)(3), (b)(4), (b)(7), (b)(15), and (b)(20).

- Two exceptions concern the release of information to a court or other tribunal, wherein the fact finder reviews the information in camera to determine its admissibility in a proceeding. N.J.S.A. 9:6-8.10a(b)(6) and (b)(14).

- Two exceptions concern CARI checks and the release of information to day care organizations and other entities required by statute to consider child abuse investigations. N.J.S.A. 9:6-8.10a(b)(10) and (b)(13). Those two exceptions apply only when a finding of abuse or neglect is "substantiated."

- Three exceptions concern the release of information to parents themselves, or their legal counsel, during a discussion with the Department about the investigation or during an appeal of the Department's actions. N.J.S.A. 9:6-8.10a(b)(12), (b)(17), and (b)(19). Under N.J.S.A. 9:6-8.10a(b)(19), the Department can discuss with a parent the reasons for its involvement with the family.

- Three exceptions concern the Department's ability to release information to service providers or proposed caretakers that need to know details about a child's history. N.J.S.A. 9:6-8.10a(b)(5), (b)(11), (b)(16), and (b)(23).

- Three exceptions concern the release of information to government agencies that study child protection issues and make policy recommendations. N.J.S.A. 9:6-8.10a(b)(8), (b)(21), and (b)(22). In such contexts, identifying information is concealed.

- One exception allows release of information about the disposition of the investigation to the person that made the referral. N.J.S.A. 9:6-8.10a(b)(18).

In addition to the enumerated exceptions in N.J.S.A. 9:6-8.10a, a "not established" finding also may be considered by the Department in its child protection and welfare work. For example, it may be considered in the analysis of a person's suitability for providing "kinship care." N.J.A.C. 3A:51-2.1(e); see also N.J.A.C. 3A:10-7.5(a)(6) (factors to be considered when determining a finding of "substantiated" or "established" include "[e]vidence

suggesting a repetition or pattern of abuse or neglect," thus allowing use of information from a "not established" finding). According to the Department when promulgating its current regulations, a "not established" finding is not used by the Department as an aggravating factor for a subsequent finding of "substantiated" child abuse or neglect. 45 N.J.R. 738(a) (response to comment 31); see N.J.A.C. 3A:10-7.4(a) (listing required findings for "substantiated").

## IV.

### A.

The Fourteenth Amendment of the United States Constitution ensures that "no State shall 'deprive any person of life, liberty, or property without due process of law.'" Jamgochian v. State Parole Bd., 196 N.J. 222, 239 (2008) (quoting U.S. Const. amend. XIV, § 1). The New Jersey Constitution does not use the same language, but Article I, Paragraph 1's language -- providing that every person possesses the "unalienable rights" to enjoy life, liberty, and property, and to pursue happiness -- is construed as a "fundamental guarantee of due process." Ibid.; Lewis v. Harris, 188 N.J. 415, 442 (2006)).

Due process rights are implicated "whenever an individual risks governmental exposure to a 'grievous loss.'" State in Interest of D.G.W., 70 N.J. 488, 501 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (quoting, in turn, Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S.

31

123, 168 (1951) (Frankfurter, J., concurring))). Such an analysis requires first a determination that due process applies and then what process is due. Ibid. (citing Morrissey, 408 U.S. at 481; Avant v. Clifford, 67 N.J. 496, 518-22 (1975)). It long ago became a recognized truism to declare that due process is flexible. See Morrissey, 408 U.S. at 481. But,

> [t]o say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.
>
> [Ibid.]

When determining the protections due process demands in a given situation, there must occur an identification and then balancing of the "nature of the government function involved as well as . . . the private interest . . . affected by governmental action." D.G.W., 70 N.J. at 502 (first ellipsis in original) (quoting Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 895 (1961)). We apply the balancing test from Mathews v. Eldridge, 424 U.S. 319 (1976), to do that. Jamgochian, 196 N.J. at 240. That test examines,

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal

32

and administrative burdens that the additional or substitute procedural requirement would entail.

> [Ibid. (quoting Mathews, 424 U.S. at 335).]

Mathews recognizes that an evidentiary hearing "is neither a required, nor even the most effective, method of decisionmaking in all circumstances," so long as the person whose rights are affected is given an opportunity to assert his or her claim prior to any administrative action. 424 U.S. at 348-49. Thus, minimally, notice and opportunity to be heard are the essentials of due process.

## B.

S.C. claims a violation of her due process rights because she was not afforded an adjudicatory hearing on the "not established" determination from her investigation. And she claims that the letter notifying her of the Department's findings separately failed due process considerations. We examine first the precise interest asserted.

## 1.

S.C. underwent a Department investigation based on an alleged claim that she engaged in child abuse. An investigation is distinct from an adjudication of facts and gives rise to a different set of expectations. That is a distinction well recognized as a general concept, see Hannah v. Larche, 363 U.S. 420, 440-41 (1960), and in the specific context of a Department investigation.

In <u>Hannah</u>, the Supreme Court held that the requirements of due process are different for adjudications of facts versus an investigation. As the United States Supreme Court explained,

> when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used.
>
> [<u>Id.</u> at 442.]

See also <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 427 (1969) (reaffirming <u>Hannah</u>'s distinction between adjudicatory and investigative action by a public entity).

With respect to the context of the present matter, in New Jersey, courts have recognized a finding by the Department of "not established" -- like the earlier finding of "unsubstantiated" -- to be an investigatory action and not an adjudication.

Twenty years ago, in <u>In re R.P.</u>, the Appellate Division held that "[a] finding by [the Department] that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at

34

risk of harm, is purely investigatory in nature."  333 N.J. Super. 105, 117

(App. Div. 2000).  The R.P. court explained that "there has been no

determination of the accuracy" of the findings, ibid., rather, the investigation

consists of interviews and "other available evidence" followed by a review and

analysis of the information, id. at 116-17.  The investigator concludes with a

"recommendation as to whether any action should be taken against the subject

of the investigation."  Ibid.  The issue in R.P. concerned the transmittal of a

finding of "unsubstantiated" to an educational entity, and in that context, the

court required the Department to correct its practice, cautioning that "parties to

whom the finding is disseminated" should be informed that there has "not been

any adjudication of those allegations."  Ibid.

The Department's role as the statutory investigator of allegations of

child abuse and neglect cannot be disputed and has been acknowledged in a

variety of settings.  See, e.g., G.S. v. DYFS, 157 N.J. 161, 169-70 (1999)

(referring to DYFS's "investigative responsibilities"); In re A.I., 393 N.J.

Super. 114, 119, 123 (App. Div. 2007) (analyzing "the issuance of letters

embodying findings by the Institutional Abuse Investigation Unit of the

Department of Human Services"); In re L.R., 321 N.J. Super. 444, 452 (App.

Div. 1999) ("DYFS has been granted broad authority to investigate child abuse

allegations, including specific authority to investigate any child abuse

allegation against a public school teacher and to report its findings to the teacher's employer."  (emphases added) (citing N.J.S.A. 18A:6-7a)).

More recently, the Appellate Division specifically recognized a Department finding that a report of child abuse was "not established" to be merely an investigatory determination when analyzing a due process argument.

In Department of Children & Families v. D.B., two teachers were accused of harming two different students.  443 N.J. Super. 431, 433-34 (App. Div. 2015).  Subsequent investigations led the Institutional Abuse Investigation Unit (IAIU) of the Department to enter "not established" findings.  Id. at 434.  The teachers each received a letter memorializing those findings.  Ibid.  The teachers subsequently sought "to have the Department's findings letter changed from 'not established' to 'unfounded.'"  Ibid.  The teachers also contended that the Department's finding that the child in each case "'was harmed or placed at risk of harm' constitute[d] an adjudication and not a mere investigatory finding," such that the appellants were entitled to an adjudicatory hearing.  Id. at 440.

In a consolidated opinion, the Appellate Division affirmed the "not established" finding and rejected the argument that an adjudicatory hearing was required for that investigatory finding, but reversed and remanded for the Department to issue new letters that revealed more information about the

36

investigation. Id. at 434, 446-47. The Appellate Division held that the "notification-of-findings process" itself did not constitute a violation of due process and further held that the teachers were not entitled to an adjudicatory hearing to challenge the "not established" finding because such finding is purely investigatory. Id. at 443-44 (relying on Dep't of Children & Families v. S.P., 402 N.J. Super. 255, 270 (App. Div. 2008) (holding that a teacher was "not entitled to an adjudicatory hearing to challenge a finding that child abuse allegations are not substantiated")).[8]

2.

In the appeal before us, the Appellate Division rightly viewed S.C.'s claimed right to an adjudicatory hearing through the prism of the Department's "investigatory finding." The Department's use of the word "finding" cannot be allowed to obscure what the classification of "not established" actually signifies here: the Department has not adjudicated facts or reached any sort of conclusion about what actually occurred when it applies a "not established" finding; rather, it merely ascribes what functions as a working label to the

---

[8] The Appellate Division reached a different conclusion with respect to an investigation that resulted in an "established" finding of the reported child abuse. See DCPP v. V.E., 448 N.J. Super. 374, 402 (App. Div. 2017) (holding that the Department's finding that reported child abuse meeting that statutory definition of the term had been "established" by a preponderance of the evidence constituted a conclusion that child abuse occurred, entitling the person against whom the finding is made to an administrative hearing).

37

evidence collected through investigation.  That distinction substantially lessens any private interest impact that S.C. can claim.

And, when investigatory findings of "not established" (leaving aside for the moment the standard for that designation), as opposed to "unfounded" (which results when no evidence of harm or risk of harm to a child is found in an investigation), are retained and used by the Department in furtherance of its future child protection and welfare activities in connection with the individual investigated, it is difficult in this context to see an impacted private interest of any appreciable weight.

But assuming there is a private interest in that intra-agency retention and use of its investigatory work product -- based on S.C.'s assertion of a liberty interest in reputation for which she argues she need not show any tangible loss -- the claimed private interest is far outweighed by the Department's legitimate reasons for acting knowledgeably in future investigations with respect to its prior interactions with an individual, suspected of child abuse or neglect, whose investigation did not conclude with an "unfounded" finding.  We see no basis to support S.C.'s insistence on an adjudicatory, trial-type hearing in order for the Department to retain and internally use its own investigatory work product when called on to investigate the individual or family again in the future.  Due process does not require an adjudicatory proceeding under such

38

circumstances. These are only <u>investigatory</u> findings. We will not require an adjudicatory hearing, to convert them into adjudicative facts, in order for the Department to use them in their future child protective work involving the subject of the investigation.

S.C.'s interest in the investigatory finding warrants separate consideration when that finding is made available in connection with the exceptions and disclosures enumerated in N.J.S.A. 9:6-8.10a, however. With respect to those, we also assess the governmental action against which the claimed private interest must be balanced.

The Department rightly counters that the information collected in connection with the investigation is, by statute, kept confidential and disclosed under limited circumstances, and further that action cannot be taken on the information without additional process. Indeed, several of the disclosures relate to the family or its legal representative, N.J.S.A. 9:6-8.10a(b)(12), (b)(17), and (b)(19), or to service providers or caretakers who will be working with the child or family and need the information, N.J.S.A. 9:6-8.10a(b)(5), (b)(11), (b)(16), and (b)(23). We fail to perceive any private protectible due process interest concerning the investigatory findings in those settings.

Nor is there a private due process interest that outweighs the importance of the governmental need in the instances where the Legislature has decreed

39

that other governmental agencies have an urgent need for Department investigatory records and findings other than those that are deemed "unfounded." N.J.S.A. 9:6-8.10a(b)(1), (b)(2), (b)(3), (b)(4), (b)(7), (b)(15), and (b)(20). The balancing of interests favors the sharing of the mere investigatory finding, notwithstanding the claim of reputational harm, without imposing the pre-condition of an adjudicatory hearing before such information may pass from the Department to the other governmental entities. In so holding, it again must be noted that the "not established" finding does not reach any conclusion that child abuse occurred, unlike an "established" finding.

To the extent that two exceptions involve the release of information to a court or other tribunal, N.J.S.A. 9:6-8.10a(b)(6) and (b)(14), the fact finder in those settings will review the information in camera to determine its admissibility. That process provides the subject adequate opportunity to be heard on the threshold issue of admissibility and thereafter to cross-examine and offer contrary proofs, see, e.g., L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204-05 (2015), obviating any present due process requirement for an adjudicatory hearing.

Finally, to the extent that two other exceptions concern CARI checks and the release of information to day care organizations and other entities

required by statute to consider child abuse investigations, N.J.S.A. 9:6-8.10a(b)(10) and (b)(13), the Department represents that those exceptions are implemented in concert with N.J.A.C. 3A:10-7.7(a), which directs the Department to "disclose only substantiated" findings in response to CARI checks and thus cabins similarly all these related information release requests. We take the Department at its word and regard these two exceptions to confidentiality as carrying the caveat that they apply when a finding of abuse or neglect is "substantiated."

### 3.

Upon consideration, we reject the argument that the above-reviewed statutory scheme, which permits potential release or disclosure of "not established" findings in the enumerated settings, raises a due process concern that can only be met by requiring a right to a full adjudicatory hearing. S.C. expressly asks for, essentially, a contested case proceeding to be transmitted and heard before the Office of Administrative Law, along the lines of what is provided for "substantiated" findings.

"Substantiated" findings in child abuse and neglect investigations that are subject to claims of disputed material facts receive such formal judicialized treatment. See N.J.A.C. 3A:5-4.3(a)(2). But no such right is afforded to "not established" findings by statute or regulation. We conclude due process does

41

not compel imposition of a formalized adversarial trial-type process in the setting of a "not established" finding -- where no child abuse conclusion has been reached. It is the result of an <u>investigation</u>, and the record and finding from that investigation are kept by the Department and used only as set forth by statute. Although the amici posit anecdotal settings where "not established" findings may also be made available, we consider here only the extant statutory uses facing S.C. as a result of a "not established" finding, and we do not address speculative settings that are not presented in this record.

C.

Having rejected the obligation to provide an adjudicatory hearing when rendering an investigatory finding that an allegation of child abuse or neglect is "not established," we consider further S.C.'s reputational concern.

To the extent that S.C. claims a reputational interest deserving of the basics of due process protection and simple fundamental fairness, concepts to be recognized and preserved, <u>see</u> <u>Doe v. Poritz</u>, 142 N.J. 1, 104-05, 108-09 (1995), that interest can be properly respected without the requirement of a full-fledged adjudicatory hearing. S.C.'s reputational interest, as well as the interests of the Department in satisfying its child protection mission now and into the future in an effective manner, are recognized, respected, and balanced through (1) meaningful notice of the Department's planned investigatory

42

conclusion of a "not established" finding and (2) affording the investigated subject an informal opportunity to be heard by the agency before the investigatory finding is finalized.

Procedural flexibility is a hallmark of due process, as well as administrative law. Adherence to formal trial procedures is not the default process. The essential elements of notice and opportunity to be heard are what due process protects.

In keeping with those essentials, when the Department is concluding an investigation into suspected child abuse or neglect and expects to issue a finding of "not established," notice -- meaningful for due process considerations -- of that investigatory finding should be provided to the individual. The notice should include a summary of the support for the finding, and the Department's reasoning should be transparently disclosed. No doubt, confidentiality concerns and the need to protect the child from potential future risk of harm must also be respected. Moreover, the individual must be informed of his or her opportunity to rebut the Department's conclusion or supplement the record so that the informal opportunity to be heard before the agency is not illusory.[9] The current process of not making a record available

---

[9] The Department's citation to us of N.J.S.A. 9:6-8.10a(b)(19) does not satisfy the Department's responsibility in this regard. The regulation provides no assurance that a parent or guardian is informed of an informal opportunity to

unless and until an appeal is filed is no substitute for the basic notice and opportunity to be heard considerations that we recognize here.

As we have been informed about the current process through this appeal, meaningful notice and an informal opportunity to be heard on the agency's investigatory finding did not occur. The conclusory letter that the Department sent to S.C. failed to inform her of the basis for the Department's "not established" finding. And there does not appear to be an adequate means of formally making known to a parent or guardian under investigation the opportunity to be heard informally and rebut or supplement the record. Corrective action by the Department in the future can solve that.

With respect to the Department's standard for making a finding of "not established," we agree with the criticism that the standard for that finding, as written now, is vague, amorphous, and incapable of any objective calibration. All we know is that it requires less than a preponderance of the evidence and involves "some" evidence. At the very least, the "some evidence" description advanced by the Department must be understood to be "credible evidence." Beyond that one cannot know what the Department intends by its standard and how it is to be evaluated.

---

be heard by the Department on a proposed "not established" finding and rebut or supplement the record before the Department finalizes its conclusion.

We leave to the Department the responsibility to reexamine and clarify its standard.  No facial challenge is presented in this matter and we will not reach the issue without that.[10]

---

[10] Our dissenting colleague concludes that the evidence in this matter should compel a finding of "unfounded."  He could have ended his dissent there but instead flouts conventional principles of appellate jurisdiction by addressing an issue not raised by the appellant.  He would declare the creation of a "not established" category of investigatory finding to be an ultra vires act by the Department.

S.C., who brought this appeal, first to the Appellate Division and then, by way of petition, to this Court, conceded she did not raise the issue.  The Appellate Division decision flagged that the issue was not raised, first in the majority opinion that identified the only two issues before that court, and then in the concurring opinion of Judge Messano, which explicitly stated that no facial challenge to the Department's regulation was presented and pointedly declined to address an unraised facial challenge to the regulatory category of a "not established" finding.

Appellate review is not unbounded.  Appellate jurisdiction must be invoked, and the court rules require precise identification of the issues raised.  See R. 2:6-2(a)(6) ("For every point, the appellant shall include in parentheses at the end of the point heading the place in the record where the opinion or ruling in question is located or if the issue was not raised below a statement indicating that the issue was not raised below.").  After certification is granted, an appellant may not supplement the issues before this Court.  See, e.g., State v. Cabbell, 207 N.J. 311, 327 n.10 (2011) (declining to consider an argument raised by the defendant through a supplemental brief); Hirsh v. State Bd. of Med. Exam'rs, 128 N.J. 160, 161-62 (1992) (declining to rule on claims first presented by appellant after the petition for certification had been granted).

The dissent asserts it is not bound by those reins of normal appellate practice because amici referred to the issue, and because a question was posed from the bench on the subject.  Both explanations fall short.  An amicus must accept the case as presented by the parties.  See State v. Lazo, 209 N.J. 9, 25 (2012); Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J.

As for S.C., we remand for her to have the opportunity to rebut or supplement the Department's record, after the Department provides greater clarity for its conclusion. The remand will allow development of a proper record that can be reviewed on appeal for abuse of discretion.

V.

The judgment of the Appellate Division is reversed and the matter is remanded for further action consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate opinion, concurring in part and dissenting in part.

---

38, 48-49 (1982). And, to suggest that the normal rules governing appellate jurisdiction could be evaded by a question from the bench would endorse a roving standard in place of the longstanding, sensible controls that have brought order to appellate practice.

S.C.,

Appellant,

v.

New Jersey Department of Children and Families,

Respondent.

JUSTICE ALBIN, concurring in part and dissenting in part.

The Legislature has empowered the Department of Children and Families (Department) to investigate child abuse allegations and determine whether those allegations are either "substantiated" or "unfounded." The statutory framework requires the expungement of "unfounded" complaints. The legislative purpose is to ensure that "unfounded" allegations do not tar the reputations and employment prospects of innocent parents.

In an end-run around the statutory expungement requirement, the Department exercised its rulemaking authority to create a new category called "not established." Under this regulatory regime, the Department does not have to expunge "not established" child abuse complaints -- only "unfounded" complaints. "Not established" complaints are complaints that are not sustained by a preponderance of the evidence, yet contain "some evidence" supporting the abuse allegation, even though that evidence may lack credibility or

1

corroboration. That definition of "not established" is the ultimate misnomer because, in the Department's lexicon, "not established" actually establishes a basis for not expunging a record.

The Department's staff workers now categorize most unproveable child abuse complaints as "not established," rendering the expungement remedy illusory, as in the present case of S.C., a mother whose good name is sullied by uncorroborated and unsustained charges of child abuse.

Undoubtedly, the Department is well intentioned in not wanting to expunge records that it believes may be useful in the future. But the Department must act within the purview of the law rather than overthrow a legislative mandate. The amorphous "some evidence" standard to support "not established" determinations does not comport with elemental due process guarantees. Even more fundamentally, the "not established" category is at odds with the Legislature's enabling statute. I therefore would strike down the regulatory category of "not established." The Department can appeal to the Legislature for any ameliorative amendments that it thinks are in the best interests of the child welfare system.

I believe that the majority's decision clearly leads to a better system of justice by imposing due process requirements and calling for a new evidentiary standard for "not established" findings, and I applaud that effort.

Nevertheless, I believe that the Department's "not established" standard is so fundamentally flawed that it defies even this Court's remedial measures to save it. I would address the defect at the heart of the regulatory scheme -- the Department's exercise of a power not delegated to it by the Legislature. Addressing that issue would come as no surprise to the Department, which has defended the legality of its regulatory scheme before the Appellate Division and this Court. Based on the record before us, the complaint against S.C. falls within the "unfounded" category, and therefore I would end this matter without a remand or any further burdens or costs imposed on this innocent mother.

I therefore respectfully concur in part and dissent in part.

## I.

In May 2016, the Department began an investigation of S.C. after her seven-year-old son Luke told a school official that his mother hits him with an open hand and a spatula on parts of his body. No bruises or marks were observed on Luke's body. Luke, a triplet, is classified as an emotionally disturbed, special needs student. He had exhibited behavioral problems in the past in school. Although the school official "hated to call [the Department] on this family because they [had] no other concerns," the official indicated that

Luke's "disclosure" mandated that the Department be notified. No one can quarrel with the school's fulfillment of its statutory duty.

The Department learned from school officials that S.C. and her husband were attentive and caring parents, who attended child study team meetings and were very involved in their children's lives. School officials expressed no concern about the family and believed that Luke was having a difficult week when he made the allegations. A Department investigator spoke with S.C., her husband, Luke's two sisters, and Luke. Luke's father and siblings told the investigator that they never observed S.C. strike Luke with a spatula, and S.C. denied doing so. S.C. stated that, at times, she disciplined the children with an open hand, and her husband admitted to lightly spanking the children on occasion. Beyond this parental discipline, the investigation uncovered nothing that even remotely established that these parents engaged in excessive corporal punishment. See N.J.S.A. 9:6-8.21(c)(4)(b) (stating that a child is abused or neglected if a parent inflicts excessive corporal punishment on a child).

At the conclusion of the investigation, S.C. received a letter from the Department stating it determined that Luke's allegations were "not established." Yet, S.C. could not take heart from what she read. The letter stated that "not established" meant that "some evidence indicates that a child was harmed or placed at some risk of harm, but there is not a preponderance of

4

evidence that the child has been abused or neglected per N.J.S.A. 9:6-8.21."

(emphasis added).

S.C. was advised that her family would not require the services of the Department and that she had no right to an administrative appeal. She was also told that the Department would retain the records of the investigation, which could be disclosed pursuant to N.J.S.A. 9:6-8.10a.

That statute sets forth more than twenty categories for the release of "not established" complaint records. See N.J.S.A. 9:6-8.10a(b). For example, records may be released to authorities who are in a position to determine a parent's fitness to have custody of her children, provide kinship care for a relative's children, or offer a foster home for other children. See ibid. Release of "not established" records to service providers may permanently impair a parent's reputational interest based on nothing more than a "some evidence" finding. See N.J.S.A. 9:6-8.10a; Dep't of Children & Families v. R.R., 454 N.J. Super. 37, 41-42 (App. Div. 2018).

That is the factual and legal landscape that brings this case before us.

## II.

Whether the Department has the statutory authority to promulgate a regulation that allows "not established" child abuse records to be maintained and released to certain entities is an issue that was sufficiently raised and

argued before this Court. Its resolution would cause no surprise or unfairness to the parties.

Admittedly, S.C. did not raise this issue in her petition, although she did advert to this issue in her Appellate Division papers. The Department, moreover, defended the legality of the regulatory system not only before the Appellate Division but also before this Court, particularly in response to the challenge by amicus curiae Legal Services of New Jersey.[1] Indeed, over the Department's objection, we granted amicus status to Legal Services with full knowledge that it was raising this specific issue.[2] Nearly twenty-seven pages of the Department's supplement brief was dedicated to the argument that the "not established" category was not ultra vires. It would come as no surprise to the parties if this Court were to address an argument that it invited. We also granted amicus status to the New Jersey State Bar Association, which argued

---

[1] Point I of the Department's brief to this Court is entitled: "THE DEPARTMENT OF CHILDREN AND FAMILIES' CREATION OF AN INVESTIGATIVE CATEGORY OF 'NOT ESTABLISHED' IS CONSISTENT WITH THE BROAD DELEGATION OF AUTHORITY SET FORTH IN N.J.S.A. 9:6-1 ET SEQ."

[2] In its initial brief in support of its motion to participate as amicus curiae, Legal Services presented a challenge to a deeply flawed legal framework "involving agency regulatory and administrative actions that exceed and conflict with statutory authority." Legal Services concluded that brief by stating that the "Department's arrogation of authority in contradicting the binary legislative framework, creating two new very problematic categories, suggests ultra vires activity by the agency."

6

that the "not established" category should be struck down on due process grounds and that "[t]he standard for arriving at a 'not established' determination is not supported by statute."  Additionally, the legislative authority for the regulatory scheme was explored during oral argument before this Court.

I will therefore address the foundational issue -- whether the Department acted within the proper ambit of its regulatory authority by creating a category of "not established" claims.

III.

One of the paramount responsibilities of the State is to protect children from the infliction of harm, even from their parents and guardians.  To that end, the Legislature has enacted a statutory scheme -- Title Nine -- that provides for the investigation of child abuse and neglect accusations.  N.J.S.A. 9:6-8.8 to -8.114.  Under that scheme, a child who is subjected by his parents to "physical injury by other than accidental means which causes or creates a substantial risk of . . . protracted impairment of physical or emotional health" is an abused or neglected child.  N.J.S.A. 9:6-8.21(c)(1).  For example, the statutory scheme prohibits the "infliction of excessive corporal punishment." Id. at (4)(b).

The Legislature delegated to the Department the power to investigate all allegations of child abuse or neglect. See N.J.S.A. 9:6-8.11. At the conclusion of the investigation, Title Nine confers on the Department the authority to determine whether the claim of abuse or neglect is "substantiated" or "unfounded."[3] See N.J.S.A. 9:6-8.10a; N.J.S.A. 9:6-8.40a. Under this two-tiered system, substantiated allegations are retained and subject to disclosure pursuant to N.J.S.A. 9:6-8.10a and unfounded allegations are subject to expungement pursuant to N.J.S.A. 9:6-8.40a (expungement statute). In particular, N.J.S.A. 9:6-8.40a(a) provides that the Department "shall expunge from its records all information relating to a report . . . of child abuse or neglect" if the Department determines that the "allegation of the incident was unfounded." Before 2004, N.J.S.A. 9:6-8.40a defined "unfounded" as a complaint that raises "no concern on the part of the [D]ivision that the safety or welfare of the child is at risk." N.J.S.A. 9:6-8.40a(b) (2003). In 2004, the Legislature amended N.J.S.A. 9:6-8.40a, authorizing the Department to promulgate rules setting forth "[t]he definition of, and process for, making a determination of an unfounded report." N.J.S.A. 9:6-8.40a; L. 2004, c. 130, § 32.

---

[3] When the Department finds an allegation to be "substantiated," the regulations permit the parent or guardian to seek an administrative hearing. See N.J.A.C. 3A:5-4.3.

In the wake of the amendment to N.J.S.A. 9:6-8.40a, the Department adopted two categories of investigative findings -- "substantiated and unfounded" -- and made the standard for those determinations "consistent with the legal standard for fact finding hearings as expressed in [N.J.S.A. 9:6-8.46]," which provides for determinations based on the preponderance of the "competent, material and relevant evidence." See 36 N.J.R. 4617(a) (Oct. 18, 2004); see also 37 N.J.R. 282(a) (Jan. 18, 2005).

Significantly, before 2004, the Department had a three-tiered regulatory scheme -- "substantiated," "not substantiated," and "unfounded." See 36 N.J.R. 4617(a). The new regulatory scheme eliminating the "not substantiated category" was adopted, in part, in response to complaints that the Department's investigators "tended to classify their findings in [that] category" to avoid expunging records, and that the evidentiary standard for "not substantiated" determinations was deficient. See ibid.

Under the new regulation, an allegation of abuse or neglect not supported by a preponderance of the credible evidence in the record was deemed "unfounded" and therefore subject to expungement. See 37 N.J.R. 282(a). The two-tiered system, in the words of the Department, would "result in more definitive decisions about children's safety and clarify outcomes for families and child welfare professionals." See 36 N.J.R. 4617(a). The two-

9

tiered system fully complied with the structure of Title Nine and the expungement statute, N.J.S.A. 9:6-8.40a.

In 2011, the Governor vetoed a bill that would have brought back the "not substantiated" determination. See A. 4109 (2011)/S. 1570 (2010). Under the rejected legislation, a "not substantiated" determination would be satisfied when "the available information . . . provides some indication of a finding that a child has been harmed or placed at substantial risk of harm by a parent or guardian." See ibid. The legislation would not have provided for expungement of records related to a "not substantiated" determination. See ibid.

From 2004 to 2012, the Department conducted abuse and neglect investigations, making one of two possible determinations, consistent with its statutory mandate: "substantiated" or "unfounded." See N.J.S.A. 9:6-8.10a; N.J.S.A. 9:6-8.40a; 45 N.J.R. 738(a) (Apr. 1, 2013); 36 N.J.R. 4617(a). For the year 2012, the Department reported 9148 "substantiated" determinations and 79,558 "unfounded" determinations that required expungement of records.[4]

---

[4] The 2012 data referenced here and later in this opinion can be found at Division of Child Protection & Permanency, Child Abuse and Neglect Reports and Substantiations (2012), https://www.nj.gov/dcf/childdata/referrals/2012-AnnualAbuseNeglectReport.pdf, by subtracting the institutional numbers from the total numbers.

In 2013, apparently in reaction to the high number of records being expunged under the two-tier system, the Department used its rulemaking authority to create a four-tier system -- "substantiated," "established," "not established," and "unfounded" -- for resolving abuse and neglect complaints. See N.J.A.C. 3A:10-7.3. Of the four categories, only "unfounded" allegations are subject to expungement. N.J.A.C. 3A:10-7.7(b). An allegation is "'unfounded' if there is not a preponderance of the evidence indicating that a child is an abused or neglected child . . . , and the evidence indicates that a child was not harmed or placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(4). In contrast, an allegation is "'not established' if there is not a preponderance of the evidence that a child is an abused or neglected child . . . , but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3) (emphasis added). The Department takes the position that the "evidence" referred to in the "not established" category is merely "some evidence." 45 N.J.R. 738(a).

In its brief to this Court, the Department explained that in determining whether there is "'some evidence' of harm or risk of harm" under N.J.A.C. 3A:10-7.3(c)(3), "[t]he credibility and veracity of the statements are not at issue -- only their existence." Under that elastic definition, almost all abuse allegations on their face would fit within the "some evidence" standard, with

11

certain illustrative exceptions, as noted by the Department at oral argument. The "some evidence" test would not be met, according to the Department, when a child states that a parent "brought a Martian in to beat me up" or when a video shows that a parent was in another state at the time of the alleged abuse. Under that approach, almost any baseless allegation of abuse and neglect could fall within that standardless definition for "not established," thus justifying the non-expungement of records. There is very little difference between the "not established" category adopted by regulation by the Department and the "not substantiated" category passed by the Legislature but vetoed by the Governor.

In 2017, just three years after adopting the "not established" determination, that category accounted for over seventy percent (70%) of all determinations. Out of 87,574 allegations, the Department reported 62,514 "not established" determinations. In 2012, based on "unfounded" determinations, the Department expunged records relating to approximately ninety percent (90%) of abuse and neglect allegations. In 2017, with the new "not established" category, the Department expunged records relating to just over twenty percent (20%) of abuse and neglect allegations. Comparing the

two-tiered system in 2012 to the four-tiered system in 2017, there were 60,835 fewer allegations subject to expungement under the four-tier system.[5]

The Department has promulgated regulations to successfully circumvent the expungement statute by retaining records that are not supported by a preponderance of the evidence. The Department has transformed the term "not established" -- in Orwellian double-speak fashion -- to actually establish a basis for not granting expungement relief to a parent, such as the mother here, when allegations cannot be proven by the lowest evidential standard -- a preponderance of the evidence.

The Legislature evidently intended "unfounded" abuse or neglect allegations to be expunged because a parent cleared of such allegations should not suffer collateral civil consequences. See N.J.S.A. 9:6-8.40a. Despite that clear legislative objective, the disclosure of "not established" allegations to some service providers under the Department's "some evidence" standard has the capacity to permanently and unfairly tar a parent's reputation and deny that parent meaningful opportunities.

---

[5] The 2017 data can be found at Rutgers School of Social Work, Child Abuse/Neglect Report, https://njchilddata.rutgers.edu/portal/child-abuse-neglect-report (last visited May 12, 2020), by utilizing the filters for "Family Reports" and "Findings."

IV.

The majority has made a commendable effort to mend a broken regulatory scheme that denies parents such as S.C. -- cleared of wrongdoing -- minimal standards of due process. I believe this regulatory scheme, however, directly contravenes the legislation that it is intended to advance, and therefore nothing short of eliminating the "not established" category is a fix.

An administrative agency possesses only those powers delegated to it by the Legislature. See N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-62 (1978). Although the grant of that authority "is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities," id. at 562, an agency cannot exercise powers that contravene the statutory language or the Legislature's intent, see A.A. Mastrangelo, Inc. v. Comm'r of Dep't of Envtl. Prot., 90 N.J. 666, 684 (1982). An administrative regulation, moreover, "must be within the fair contemplation of the delegation of the enabling statute." S. Jersey Airways v. Nat'l Bank of Secaucus, 108 N.J. Super. 369, 383 (App. Div. 1970).

Title Nine directs the Department, when investigating allegations of abuse and neglect, to determine whether those allegations are "substantiated" or "unfounded." See N.J.S.A. 9:6-8.10a; N.J.S.A. 9:6-8.40a. The Legislature directed the Department to expunge the records of "unfounded" allegations,

14

delegating to the Department the authority to define the term "unfounded." See N.J.S.A. 9:6-8.40a. The Department accomplished that task by adopting a regulation defining the term "unfounded" in accordance with the enabling statute. Ibid.; 37 N.J.R. 282(a). By passing a bill that would have added a category between substantiated and unfounded -- a bill ultimately vetoed by the Governor -- the Legislature presumably expressed its understanding that creating a new category was a legislative prerogative. See A. 4109/S. 1570 (vetoed by Governor Christie).

In express contravention of that legislative prerogative, as well as the expungement statute, the Department promulgated the current four-tiered system, adding the "not established" category that allows the Department to maintain and share records despite a finding that a preponderance of the evidence does not support an allegation against a parent. See N.J.A.C. 3A:10-7.3(c); A.A. Mastrangelo, 90 N.J. at 684 ("[W]here the enabling legislation cannot fairly be said to authorize the agency action in question, the power is denied."). The Department evidently was concerned that too many records relating to abuse and neglect investigations were falling within the "unfounded" category, resulting in the expungement of those records.

The Department's position that abuse and neglect investigation records should be maintained for the purpose of keeping track of potential repeat

15

allegations, even if the investigated allegation does not meet the preponderance of the evidence standard, is ultimately a policy decision. The Legislature, however, has mandated that "unfounded" allegations, which the Department has defined in N.J.A.C. 3A:10-7.3(c)(4), must be expunged. If the Department believes that the expungement of all "unfounded" allegations is not in the best interests of the State, it should present its case to the Legislature. It bears mentioning that federal law permits the maintenance of abuse and neglect records of "unsubstantiated" allegations for internal use only, see 42 U.S.C. § 5106a(b)(2)(B)(xii), an approach that might mitigate the due process concerns raised in this case.

V.

In summary, I agree with the majority that the Department's "some evidence" standard for making "not established" determinations is "vague, amorphous, . . . incapable of any objective calibration," and has led to "shortcomings in fairness for parents and guardians involved in investigations that lead to ['not established'] findings." Ante at ___ (slip op. at 4-5, 44). For the reasons stated, however, I would go further and strike down the "not established" category. I believe the Department, in creating a "not established" category under N.J.A.C. 3A:10-7.3(c)(3), has exceeded the authority delegated to it by the Legislature. The "not established" category has

16

allowed the Department to elide making the determination that the Legislature expects of it -- a determination whether the allegation is unfounded. The Department's good intentions cannot save a regulation that undermines the Title Nine expungement statute. See A.A. Mastrangelo, 90 N.J. at 684.

I would end this case today and spare S.C. the hardship and expense of a remand. The Department's own investigative findings establish that the abuse and neglect allegations in S.C.'s case are "unfounded," as defined by the Department's own regulation. See N.J.A.C. 3A:10-7.3(c)(4) ("An allegation shall be 'unfounded' if there is not a preponderance of the evidence indicating that a child is an abused or neglected child . . . , and the evidence indicates that a child was not harmed or placed at risk of harm.").

I therefore respectfully concur in part and dissent in part from the judgment of the Court.